**In re Frank J. WRIGHT, M.D., Debtor.**

**Claire M. WRIGHT and Edward R. Jaquays, Plaintiffs,**

**v.**

**Frank J. WRIGHT, M.D., Defendant.**

**Bankruptcy No. 94 B 16799.**
**Adv. No. 94 A 01714.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 25, 1995.

Charles M. Thomson, Jessica Tovrov, Harris, Thomson & Goldstein, Chicago, IL, for debtor.

Kathryn Gleason, Office of the U.S. Trustee, Chicago, IL, for the U.S. Trustee.

Edward R. Jaquays, Joliet, IL, Margaret O'Brien, Law Office of Gregory Stern, Chicago, IL, for Claire Wright and Edward R. Jaquays.

## *MEMORANDUM OPINION*

RONALD BARLIANT, Bankruptcy Judge.

### 1. INTRODUCTION

Before filing his chapter 11 petition, the Debtor and his former wife dissolved their marriage. The state court awarded the former wife $5,500 per month in unallocated family support, an additional $135,000 payable within five years, the marital home, and costs and partial attorney fees. The Debtor unsuccessfully appealed the divorce judgment and was ordered to pay his former wife's costs and attorney fees in connection with the appeal.

This adversary proceeding is an action to determine the dischargeability of the awards made by the Divorce Court. The Court finds that (1) the award of $5,500 is nondischargeable as an award of support; (2) $40,800 of the $135,000 is nondischargeable as an award of support; (3) $94,200 of the $135,000 award is a dischargeable property settlement; (4) the attorney fees awarded in connection with the divorce proceedings constitute support and are nondischargeable; (5) the attorney fees awarded in connection with the appeal are support and are nondischargeable; (6) the attorney fees incurred in connection with

1. The Dissolution Judgment addresses other issues, such as custody, which are not relevant to

the agreement by the parties to subordinate liens is not alimony, maintenance or support and is dischargeable.

### 2. FACTS

On December 14, 1992, the Circuit Court for the Twelfth Judicial Circuit, Will County, Illinois ("Divorce Court") issued a judgment for dissolution of marriage ("Dissolution Judgment") in *In re: The Marriage of Claire M. Wright vs. Frank J. Wright, M.D.*, dissolving the marriage of the Debtor and his former wife, Claire Wright. The Divorce Court awarded[1] Mrs. Wright $5,500 per month in unallocated support, reviewable at the conclusion of five years. The Debtor's obligation to pay this support is terminated upon the happening of any of the following: (1) death of Mrs. Wright; (2) death of the Debtor; (3) remarriage of Mrs. Wright; or (4) Mrs. Wright's cohabitation with another person on a continuing conjugal basis. Additionally, the Divorce Court reserved the right to modify the terms of the support based on a finding of substantial material change in the circumstances of either party.

The Court also awarded Mrs. Wright $135,000 to be paid within five years of the Dissolution Judgment. The $135,000 is comprised of three parts. First, the Divorce Court found that Mrs. Wright "has no independent means in which to accumulate assets, and that [the Debtor] has liquidated marital assets in violation of Court Order, and has been guilty of the willful and intentional dissipation of marital assets to the direct detriment of [Mrs. Wright] and the parties' minor children." The dissipated amount was determined to be $153,000. Based on this finding, the Divorce Court awarded Mrs. Wright $76,500, half of the amount of marital assets dissipated by the Debtor.

Second, the Divorce Court found that the value of the property awarded the Debtor exceeded the value of the property awarded Mrs. Wright by $36,000. The Divorce Court split the difference and awarded Mrs. Wright $18,000. Third, the Divorce Court found that there "is a great disparity in earning capacity

the issues before the Bankruptcy Court and will not be discussed in this Memorandum Opinion.

between [Mrs. Wright] and [the Debtor]" and awarded Mrs. Wright $40,800 which is 15% of the value of all the Debtor's assets.[2] No event, including death or remarriage, terminates the $135,000 award. This award in conjunction with the award of the marital home "is necessary and proper for the support of the parties' minor children, as well as of [Mrs. Wright], and that in the event the [Debtor] fails to fulfill his obligation with respect to payment of the $135,000 ... said action[ ] ... shall be considered as a basis, in and of itself, for the award of additional family support to [Mrs. Wright]."

Additionally, the Divorce Court awarded Mrs. Wright $45,000 of a total of $59,611.73 in attorney fees charged by her attorney, Edward Jaquays. The Divorce Court made a specific finding that "the purpose of the attorney fee award made herein is to supplement the child support as awarded to Claire M. Wright for the obligation to pay her attorney and to allow her to devote all her available resources to the support of the minor children." On May 27, 1994, the Appellate Court for Will County Circuit Court affirmed the Divorce Court and awarded Mrs. Wright all of Mr. Jaquays' fees in connection with the defense of the appeal. The amount of fees incurred in defense of the appeal is pending before the Appellate Court for determination.

The Debtor filed an individual voluntary petition under chapter 11 on August 23, 1994 ("Petition Date") and continues to operate his medical practice, Frank J. Wright, M.D. & Associates, S.C. ("Practice") as a debtor-in-possession. Mrs. Wright and Mr. Jaquays filed their motion for summary judgment on April 25, 1995. The Debtor filed his motion for summary judgment on May 17, 1995.

### 3. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and Local General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### 4. CROSS MOTIONS FOR SUMMARY JUDGMENT [3]

a. *Count I*

■ Count I of the complaint seeks to have the Debtor's obligation to pay $5,5000 a month to Mrs. Wright declared nondischargeable. The nature of the Debtor's obligation as nondischargeable "alimony, maintenance or support" is undisputed by either party. Therefore, the Court finds that the Debtor's obligation is in the nature "alimony, maintenance or support" and nondischargeable under § 523(a)(5).

■ The only issue disputed by the parties is the amount of arrears under this obligation. Mrs. Wright argues that by agreement of the parties on January 27, 1995 the amount of arrears was $5,683. She filed a proof of claim in the amount of $8,250 and now requests that she be allowed to have the disputed amount determined in state court. The Debtor simply argues that the amount must be determined. The Divorce Court is the appropriate forum to determine the amount of the arrears. The decision that this award is non-dischargeable support means that the automatic stay does not prohibit the parties from applying to the state court for a resolution of any dispute concerning the amount due. § 362(b)(2).

b. *Count Two*

Count II of the complaint seeks to have the $135,000 obligation, plus past due interest, declared nondischargeable under § 523(a)(5). Mrs. Wright argues that this award is in the nature of "alimony, support or maintenance" and is nondischargeable. The Debtor argues that this award is a property settlement and dischargeable. The

---

**2.** This total includes both marital property awarded in the Dissolution Judgment and non-marital property retained by the Debtor. The Divorce Court determined that value to be $272,-000.

**3.** The parties requested the award of fees in connection with each count. Success on a count in a complaint is not, by itself, a basis for an award of attorney fees and neither party has alleged any other basis for such an award. Therefore, the parties shall bear their own costs and attorney fees in connection with each count.

Court finds that only $40,800 represents "support" and is nondischargeable in the Debtor's bankruptcy.

The Bankruptcy Court is not bound by the characterizations of the Divorce Court when determining dischargeability. *Maitlen v. Maitlen (In re Maitlen)*, 658 F.2d 466, 468 (7th Cir.1981). However, the Bankruptcy Court should consider state law and the Divorce Court's intent in reaching its characterization of an award as alimony, maintenance, or support versus a property settlement. *See Matter of Coil*, 680 F.2d 1170, 1172 (7th Cir.1982); *see also In re Goin*, 808 F.2d 1391, 1392 (10th Cir.1987) ("[g]enerally, the determination of whether an obligation arising out of a divorce settlement is support is a matter of federal law, not state law"); *In re Calisoff*, 92 B.R. 346, 352 (Bankr.N.D.Ill. 1988). "Federal Courts have held that a bankruptcy court must look beyond the language of the decree to the intent of the parties and the substance of the obligation." *Goin*, 808 F.2d at 1392, citing, *Shaver v. Shaver*, 736 F.2d 1314 (9th Cir.1984).

There are several indicators upon which courts rely to characterize an award as support or a property settlement. In *In re Woods*, 561 F.2d 27, 29–30 (7th Cir.1977), the court determined that an obligation to pay certain consumer debts constituted a property settlement based on the following facts: (1) the location of the paragraph providing for the obligation was "in the midst of provisions allocating property;" (2) there were no children whose support was in question; (3) "there [was] no indication that this term was intended to balance the relative income of the parties;" and (4) the money was paid directly to creditors instead of to the wife, and therefore only a tenuous and indirect benefit to the wife. In *In re Marriage of Porter*, 229 Ill.App.3d 697, 702–704, 171 Ill.Dec. 318, 593 N.E.2d 1138 (1992) the court lists the criteria used to determine into which category a given debt falls: (1) the nature of the obligation assumed; (2) whether there are children to be provided for; (3) the relative earning power of the spouses; (4) the adequacy of support absent the debt assumption; (5) a lack of a spouse's receipt of substantial assets reflecting a need for support; (6) if the pay-

ment due the nondebtor spouse is clearly identified as proceeds of a sale of what had been a marital asset; (7) whether the payment terminates on death, remarriage, or children coming of age; (8) whether the payment is a lump sum or periodic payments over a long period of time; (9) waivers of maintenance; (10) ability to obtain modification; and (11) tax treatment of the obligation.

In *Maitlen*, 658 F.2d at 468, the Court determined that an obligation to make mortgage payments that appeared in a paragraph numbered 4, which was included under the heading of "Property Settlement Agreement", constituted support rather than property division. The Court, relying on *Woods*, 561 F.2d at 29–30, was persuaded by the facts that (1) paragraph 4 came after the paragraph dealing with child support; (2) the existence of a child to support; (3) the relative inequity of income between the parties; and (4) the mortgage money, although not paid directly to the wife, closely and directly benefited her and the child. *Maitlen*, 658 F.2d at 468. Additionally the Court determined that "[t]ermination of an obligation of the husband upon death or remarriage of the wife is an indication that the obligation is support rather than a division of property," and the obligation had a termination stipulation. *Id.* However, the Court did note that simply because one paragraph addresses support does not preclude the possibility that another paragraph may provide support in a different form.

In this case, it is clear that the Divorce Court intended that a portion of the award supplement the support for Mrs. Wright and the three minor children. Most of the award, however, is in the nature of a property settlement. The award is pursuant to § 503 of the *Illinois Marriage and Dissolution Act*, which sets out criteria for a property settlement. This section provides that a state court judge must divide marital property in "just proportions" considering the following relevant factors: (1) the contribution or dissipation of each party with respect to the property; (2) the value of the property set apart to each spouse; (3) the duration of the marriage; (4) the economic circumstances of each spouse; (5) the age, health,

employability, amount and sources of income and needs of each party; (6) the custodial provisions for any children; (7) whether the apportionment is in lieu of or in addition to maintenance; and (8) the opportunity of each spouse for future acquisition of capital assets and income. *Ill.Rev.Stat.1991, ch. 40, par. 503(d)*. Therefore, the Divorce Court judge was required to make certain "support" and "maintenance" valuations when determining the Wright's property settlement.

▪ Based on these guidelines, it is clear that the award of $135,000 has characteristics of both a property settlement and support. There are factors indicating an award of support. First, there are three minor children to be provided for. Second, the $40,800 portion of the $135,000 award was intended to balance "the discrepancy in earning capacity between [Mrs. Wright] and [the Debtor]." Third, the money is to be paid directly to Mrs. Wright for her and the children's direct and immediate benefit. Fourth, should the Debtor not pay his $135,000 obligation in full by the end of the five years, "said actions ... shall be considered as a basis, in and of itself, for the award of additional support to [Mrs. Wright]."

On balance, however, the terms of the judgment and other facts lead to the conclusion that the award is primarily a property settlement. Both the $76,500 and $18,000 portions were awarded to equalize the distribution of dissipated and marital assets. Further indicating a property settlement, Mrs. Wright received the substantial assets of the marital home with equity of $120,000, a $5,000 IRA in her name, household furnishing of $15,000 and the car valued at $3,900 to total $144,000 in property. This suggest that additional support is not necessary.

There are other indications that the $135,000 award is not purely support. First, no event, including death of either party, remarriage or cohabitation terminates the award of $135,000. This is in stark contrast to the $5,500 per month award of support which is terminable upon the occurrence of (1) death of either party; (2) remarriage of Mrs. Wright; or (3) Mrs. Wright's cohabitation on a continuing conjugal basis as determined by the Court. Second, the Court did not re-

serve the right to modify the award should the circumstances of the parties change. Moreover, the award of $5,500 per month will be reevaluated by the Court in five years. The $135,000 is owed in full by the end of the five years and is not subject to review. Finally, the Debtor's income after payment of support is not significantly greater than that of Mrs. Wright. This suggests that the entire additional award was not intended as support, but was a property distribution.

In light of these characteristics, the award will be considered in its parts to determine dischargeability. The award of $40,800 due to the discrepancy in the parties earning capacities is in the nature of support. The Divorce Court specifically stated that this award was intended to equalize the parties earning capabilities and, therefore, it is in the nature of support and is nondischargeable. The $18,000 and $76,500 awards are property settlements and are dischargeable under § 523(a)(5). The $18,000 awarded was made purely to account for the difference in values of the property awards. The $76,500 award for dissipated marital assets was intended to reimburse Mrs. Wright for marital assets that were spent outside of the marital relationship during the time that the relationship was in jeopardy. *In re Marriage of Isaacs*, 260 Ill.App.3d 423, 198 Ill.Dec. 169, 632 N.E.2d 228 (1st Dist.1994). Had those assets not been dissipated, they would have been included in the dischargeable property division. Although possibly a harsh result, the fact that the award is now monetary does not alter its character. It is dischargeable as a property settlement.

c. *Count III*

▪ Count III seeks to have the $135,000 obligation declared nondischargeable under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity. The Court rejects this argument and enters judgment for the Debtor on this count. The Debtor did not owe a fiduciary duty to Mrs. Wright, nor is there evidence of fraud or defalcation.

The existence of a fiduciary duty is an issue of federal law, although state law may be considered in the determination. *Lanker*

*v. Wheeler (In re Wheeler),* 101 B.R. 39, 44 (Bankr.N.D.Ind.1989) (no fiduciary duty exists where wrong doing occurred prior to the property settlement and divorce decree and parties did not intend to create such a relationship). "The concept of 'fiduciary capacity' under § 523(a)(4) is limited to technical or express trusts, rather than those implied in law." *Id.,* citing *Barclays American/Business Credit, Inc., v. Long (In re Long),* 774 F.2d 875, 878 (8th Cir.1985); *see In re Teichman,* 774 F.2d 1395 (9th Cir.1985); *In re Johnson,* 691 F.2d 249 (6th Cir.1982). They are manifested by some writing arising out of positive acts by the parties. *See Id.* The fiduciary relationship must have existed prior to the wrongful conduct. *See Id.; Upshur v. Briscoe,* 138 U.S. 365, 11 S.Ct. 313, 34 L.Ed. 931 (1891). The general rule is that "§ 523(a)(4) has no application to controversies relating to property settlement agreements arising out of divorce proceeding." *Pattie v. Pattie (In re Pattie),* 108 B.R. 791, 797 (Bankr.M.D.Fla.1989) (court held no fiduciary duty existed where divorce decree did not designate Debtor as trustee nor establish an express or technical trust prior to the wrongdoing); *Wheeler,* 101 B.R. at 46. "Obligations other than alimony, maintenance, or support should only be excepted from discharge as fiduciary obligations where the intent of the parties at the time of the agreement was to establish a fiduciary relationship." *Wheeler,* 101 B.R. at 46; *see Pattie,* 108 B.R. at 797.

The Debtor did not owe a fiduciary duty to Mrs. Wright within the meaning of § 523(a)(4). There was neither an express nor technical trust created between the parties prior to the time the Debtor dissipated the assets, nor did a fiduciary duty arise solely based on a marriage contract. Mrs. Wright points to the Divorce Court's order that the Debtor "place no further lien or encumbrance against any of his existing property, real or personal" until he had satisfied his $135,000 obligation as a source of the Debtor's fiduciary duty. This argument fails because even assuming that the order did create a fiduciary duty, it was issued after the fact of dissipation and does not create a retroactive fiduciary duty on the Debtor.

Even if the Debtor had been under a fiduciary duty, Mrs. Wright has not proven defalcation. She points to the Divorce Court's finding of "dissipation" and argues that dissipation and defalcation are synonyms. Dissipation is characterized as a spouse's use of marital property for his benefit and for purposes not related to marriage at a time when the marriage relationship in serious jeopardy. *In re The Marriage of Isaacs,* 260 Ill. App.3d 423, 429, 198 Ill.Dec. 169, 632 N.E.2d 228 (1994). "Defalcation" is defined as "a failure to meet an obligation, misappropriation of trust funds or money held in any fiduciary capacity, and failure to properly account for such funds." *Blackhawk B.M.X., Inc. v. Anderson (In re Anderson),* 64 B.R. 331, 333 (Bankr.N.D.Ill.1986). There was no defalcation because the Debtor did not misappropriate trust funds by dissipating marital assets. At the time he spent those assets, he had a legal right to do so. Dissipation is a concept that is meaningful in the context of a marital dissolution and can form the basis for a judgment dividing property in particular ways, as in this case. But, it is not a trust concept and does not create a fiduciary obligation. Therefore, the $135,000 is not excepted from discharge under § 523(a)(4) and judgment is entered in favor of the Debtor on Count III.

d. *Count IV*

Count IV seeks to have the $135,000 award found nondischargeable under § 523(a)(6) for willful and malicious injury by the Debtor to another entity or to the property of another entity. The Divorce Court found the Debtor "has been guilty of the wrongful and intentional dissipation of marital assets to the direct detriment of [Mrs. Wright] and the parties' minor children" in the amount of $153,000. The Divorce Court added one half of the total amount of dissipated assets, $76,500, to the other amount included in the $135,000. These findings and decisions were affirmed by the Appellate Court. These are the only facts available to this Court on which it can make a determination as to "willful and malicious injury."

Although the Bankruptcy Code does not define "willful and malicious," the Seventh

Circuit has recently defined these terms. "[W]illful means deliberate or intentional ... [and] [m]alicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994); *McCarthy v. McCarthy (In re McCarthy),* 179 B.R. 876, 880 (Bankr.N.D.Ill.1995); *see In re Condict,* 71 B.R. 485, 487 (N.D.Ill.1987) (willful means deliberate or intentional and malicious means wrongful and without just cause for excuse even in the absence of personal hatred, spite or ill will). The Divorce Court found that the Debtor's dissipation of assets was "intentional." This satisfies the "willful" requirement of § 523(a)(6).

However, there is no evidence that the dissipation of assets was also malicious. "The language of section 523(a)(6) also requires by implication that the plaintiff also prove that her actions were "wrongful" in a legal sense." *McCarthy,* 179 B.R. at 880. Mrs. Wright argues that "dissipation" is synonymous with "conversion," and because the "phrase 'willful and malicious injury' encompasses 'willful and malicious conversion,'" *Dornik v. Maurice (In re Maurice),* 138 B.R. 890, 895, *aff'd by,* 1992 WL 308535 (N.D.Ill. 1992) quoting *In re Meyer,* 7 B.R. 932, 933 (Bankr.N.D.Ill.1981), the Debtor committed a legal wrong by dissipating marital assets. But dissipation of marital property is not conversion, nor is it legally similar to conversion. As previously noted, at the time the Debtor spent the assets, he did not violate a legal prohibition against doing so. He did not take Mrs. Wright's property without lawful authority.

Further, the debt does not represent repercussions of the kind of willful and malicious injury that gives rise to a nondischargeable debt. The debt here is created by the Dissolution Judgment and would not exist in its absence. Mrs. Wright has cited no authority holding that a spouse has a cause of action for dissipation of marital assets outside the context of the dissolution proceeding. It is simply not a legal wrong. It is, therefore, not a debt for willful and malicious injury to Mrs. Wright's property.

### e. *Counts V, VI, VII*

In counts V, VI, and VII, Mr. Jaquays, individually, seeks to have certain fees declared support to Mrs. Wright and accordingly, nondischargeable. Count V addresses $45,000 in fees awarded by the Divorce Court in the Dissolution Judgment. Count VI deals with the fees in connection with the appeal in the amount of $2,969.50. Lastly, Count VII addresses the fees in the amount of $1,570.25 in connection with an agreement between the Debtor and Mrs. Wright and Mr. Jaquays whereby the Debtor agreed to pay the fees in connection with the agreement if Mrs. Wright and Mr. Jaquays would subordinate their liens so Debtor could pay off a mortgage.

■ In the Dissolution Judgment, the Divorce Court entered a specific finding that "the purpose of the attorney fee award made herein is to supplement the child support as awarded to Mrs. Wright for the obligation to pay her attorney and to allow her to devote all her available resources to the support of the minor children." The Debtor argues that the label that the Divorce Court gave to the fees is not binding, and relies on the Appellate Court's statement that "labeling the fees in this manner [as support] does not alter their true character, however, and does not transmute them into child support or maintenance in gross." Additionally, the Debtor claims that the amount of fees attributable to the award of support has not been determined.

Generally, an obligation for support must be owed directly to the spouse to be nondischargeable under § 523(a)(5), *see In re Dirks,* 15 B.R. 775 (Bankr.N.D.M.1981), with an exception made for attorney's fees. *See Doss, Puchalski, Keenan & Bargiel, Ltd. v. Cockhill (In re Cockhill),* 72 B.R. 339 (Bankr. N.D.Ill.1987), *A.A. Legal Clinic, Ltd. v. Wells (In re Wells),* 8 B.R. 189, 193 (Bankr.N.D.Ill. 1981); *Nuellen v. Lawson,* 123 Ill.App.3d 202, 78 Ill.Dec. 619, 462 N.E.2d 738 (1984) (attorneys fees are not dischargeable even though they are paid directly to the attorney). The exception is made because (1) fees may be essential to a spouse's ability to sue or defend a matrimonial action, *In re Spong,* 661 F.2d 6 (2d Cir.1981); (2) the recipient

spouse receives a direct benefit that she would otherwise have had to pay for, *In re Calisoff*, 92 B.R. 346 (Bankr.N.D.Ill.1988); and (3) the fees often balance the income between the parties. *Id.*

According to section 508(a) of the *Illinois Marriage and Marriage Dissolution Act*, when making a determination for an award of attorney fees, the state court may consider the parties' prospective incomes, as well as their current income in awarding fees. *Ill. Rev.Stat. Ch. 40 § 508(a); In re Marriage of Phillips*, 244 Ill.App.3d. 577, 186 Ill.Dec. 108, 615 N.E.2d 1165 (1993). The rationale behind characterizing the fees as support is that "payments on account of an award of attorney's fees made pursuant to Ill.Rev.Stat. Ch. 40 § 508 directly benefit the debtor's spouse in that they are payments which the spouse would otherwise have to make." *Wells*, 8 B.R. at 193. "The majority of federal courts . . . have considered awards for attorney's fees made pursuant to [§ 508(a)] as within the meaning of alimony, maintenance or support." *Cockhill*, 72 B.R. 339; *Richards v. Loncar*, 14 B.R. 276 (N.D.Ill. 1981). However, the bankruptcy court must look at the substance of the obligation and not characterize awards of attorney's fees under § 508 as *per se* support awards. *See Maitlen*, 658 F.2d 466; *Cockhill*, 72 B.R. at 341; *c.f. Schroeder v. Schroeder (In re Schroeder)*, 25 B.R. 190 (Bankr.N.D.Ill.1982). In ascertaining the intent of the divorce court, the bankruptcy court should consider any state statutes upon which the divorce court based its determination. *See Jacobs v. Zimberoff (In re Zimberoff)*, 91 B.R. 839, 840 (Bankr.N.D.Ill.1988).

In *Cockhill*, the court held that debtor's obligation to pay ex-spouses attorneys fees was nondischargeable support where the award was based on a finding that the wife was unable to pay the fees and the Debtor could do so. 72 B.R. at 341. The wife had alleged that she was unable to pay the fees. The bankruptcy court arrived at this determination by "discerning the intent of the divorce court" from the judgment order and evidence placed in record. *Id.* at 341; *see Coil*, 680 F.2d at 1172. The divorce court "was well aware of its statutory duty under

[§ 508]" which required it to consider the relative financial resources of the parties; it determined that the wife could not pay her fees, and therefore, the award was in the nature of support. *Cockhill*, 72 B.R. 339.

In *Zimberoff*, 91 B.R. at 841, this court found that an award of attorneys fees in connection with the dissolution of a marriage is usually in the nature of support. The Debtor was not diligent in child support payments and the wife had to hire an attorney to secure a post decree enforcement order. There was no evidence in the record that the divorce court considered the financial resources of the parties in making the award. However, this court found that there was "no reason to believe that the divorce court ignored its responsibilities under Ill.Rev.Stat. Ch. 40 § 508." *Id.* The fees were incurred in the enforcement of an award for child support and therefore, nondischargeable in bankruptcy. *Id.*

The Debtor relies on *Schroeder*, 25 B.R. 190, for the proposition that simply because the divorce court labeled the award of fees as a support award is not determinative of their nature. In *Schroeder*, the court examined the "substance of the obligation," the "actual economic positions of the parties," and "the substance of their property settlement" and found that an award of attorney fees was in the nature of a property settlement. *Id.* In applying the factors set forth in *Maitlen*, 658 F.2d 466, to determine whether an award is property or support, the court found that the wife was employed and the Debtor was unemployed; the child support was minimal; and the wife had waived any right to maintenance from the debtor. "The obligation to pay the attorney's fees did not intend to balance the income of the parties since in fact [the wife's] income far exceeds the Debtor's. Further, [the wife] did not get any indirect benefit by the award such as having her interests in being supported represented because in fact she does not need to be supported." *Schroeder*, 25 B.R. at 192. Although this Court is in complete agreement with the holding of the *Schroeder* court, that holding does not rest on facts similar to those before this Court today.

The award of attorney's fees to Mrs. Wright was made in connection with the Dissolution Judgment and the appeal of that judgment. Mrs. Wright alleged that she did not have the financial resources to pay the fees. The Divorce Court was specific in its findings that the relative financial resources of the parties demonstrated that the Debtor has the ability to pay the fees. The Dissolution Judgment and appeal order state that the Debtor's income potential is between $150,000—$300,000/year. Meanwhile, Mrs. Wright has no means of acquiring assets and her monthly expenses exceeded her support payments. However, the Debtor argues that Mrs. Wright does not have a financial necessity for the award. She receives $66,000/year in support from the Debtor plus any income she could earn; she has a house with $120,000 in equity.

The Divorce Court clearly considered the Debtor's argument. It only awarded Mrs. Wright $45,000 out of $59,611.73 in total fees. She is still responsible for paying $14,611.73. The Divorce Court balanced the relevant factors and determined that Mrs. Wright would receive a direct benefit from having $45,000 of her attorneys fees paid because she could not pay them herself, but that an award of 100% of the fees was not appropriate based on Mrs. Wright's need and financial resources.

The appellate court's award of fees is an award of support. Mrs. Wright alleged her inability to defend the appeal, and the court considered the relevant factors of § 508 in this determination. The award is reasonable under the circumstances. The court had additional factors to consider aside from those before the Divorce Court when it made its determination. Mrs. Wright had $14,611.73 to pay in fees from the divorce proceeding. This additional cost to defend it should not require her to expend her and her children's support. Therefore, the entire amount is nondischargeable.

■ The fees in count VII are distinguishable from the others and are dischargeable. These fees arose out of an agreement between the parties. The Debtor agreed that if Mrs. Wright and Mr. Jaquays would subordinate their liens so that the Debtor could pay off the mortgage, he would pay the fees incurred in connection with the agreement. This contractual obligation was not awarded by a judge making a determination under § 508 and based on the relative financial resources of the parties. Therefore, there is no ground on which to find that the award is for support. Accordingly, the fees in connection with count VII in the amount of $1,570.25 are discharged.

5. **CONCLUSION**

For the foregoing reasons, an appropriate order has been entered determining that (1) the award of $5,500 is nondischargeable as an award of support; (2) $40,800 of the $135,000 is nondischargeable as an award of support; (3) $94,200 of the $135,000 award is a dischargeable property settlement; (4) the attorney fees awarded in connection with the divorce proceedings constitute support and are nondischargeable; (5) the attorney fees awarded in connection with the appeal are support and are nondischargeable; (6) the attorney fees incurred in connection with the agreement by the parties to subordinate liens is not alimony, maintenance or support and is dischargeable.

*ORDER*

For the reasons stated in the Memorandum Opinion of even date, **JUDGMENT IS HEREBY ENTERED as follows:**

(1) on Count I, judgment is entered in favor of the plaintiff determining that the award to the plaintiff of $5,500 per month made in paragraph H of the Judgment for Dissolution of Marriage, entered by the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois, on December 14, 1992 ("Dissolution Judgment") is excepted from discharge under 11 U.S.C. 523(a)(5);

(2) on Count II, judgment is entered:

(a) in favor of the plaintiff in part, determining that the award of $40,800 made in paragraph F of the Dissolution Judgment is excepted from discharge under 11 U.S.C. 523(a)(5); and

(b) in favor of the defendant in part, determining that the awards of $18,000

and $76,500 made in paragraph E of the Dissolution Judgment are dischargeable;

(3) on Count III, judgment is entered in favor of the defendant;

(4) on Count IV, judgment is entered in favor of the defendant;

(5) on Count V, judgment is entered in favor of the plaintiff determining that the award of $45,000 for attorney fees made in paragraph K of the Dissolution Judgment is excepted from discharge under 11 U.S.C. 523(a)(5);

(6) on Count VI, judgment is entered in favor of the plaintiff determining that the award of attorney fees made by the Appellate Court of Illinois, Third District on May 27, 1994 are excepted from discharge under 11 U.S.C. 523(a)(5);

(7) on Count VII, judgment is entered in favor of the defendant determining that the obligation to pay attorney fees established by agreement of the parties is dischargeable; and

(8) the parties are denied all other relief and each party shall bear his or her own costs.